**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **INRIQUE SANDERS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:25-cv-216-RAH-CWB** |
| | ) | |
| **FRANK BISIGNANO,**[1] | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>RECOMMENDATION OF THE MAGISTRATE JUDGE</u>**

**I.      Introduction and Administrative Proceedings**

Inrique Sanders ("Plaintiff") filed an application for Disability Insurance Benefits under Title II of the Social Security Act on December 3, 2021—alleging disability onset as of October 6, 2020 due to shoulder problem, arm problem, high blood pressure, neck problem, knee problem, hearing loss, ankle problem, back problem, and depression.  (Tr. 27, 79-80, 90-91).[2] Plaintiff's claims were denied at the initial level on November 18, 2022 and again after reconsideration on September 11, 2023.  (Tr. 27, 79, 88, 90, 95, 103, 117).  Plaintiff then requested *de novo* review by an administrative law judge ("ALJ").  (Tr. 27, 140).  The ALJ subsequently heard the case on March 11, 2024 (Tr. 27, 42-78), at which time testimony was given by Plaintiff (Tr. 48-73) and by a vocational expert (Tr. 72-77).  The ALJ took the matter under advisement and issued a written decision on June 18, 2024 that found Plaintiff not disabled.  (Tr. 27-38).

---

[1]  Frank Bisignano became Commissioner for the Social Security Administration on or about May 7, 2025 and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2]  References to pages in the transcript are denoted by the abbreviation "Tr."

1

The ALJ's written decision contained the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2025.

2. The claimant has not engaged in substantial gainful activity since October 6, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative impingement, degenerative arthrosis, and rotator cuff tear of the right shoulder, alcohol use disorder, depressive disorder, with anxiety, and post-traumatic stress disorder (PTSD) (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he can occasionally climb ramps and stairs but can never climb ladders, ropes, or scaffolds. He can frequently balance. He can occasionally stoop, kneel, crouch, and crawl. He can frequently reach forward and can occasionally reach overhead with the upper right dominant extremity. He must avoid all exposure to hazards, such as dangerous moving machinery and unprotected heights. He is limited to unskilled work activity, defined as simple, routine tasks, involving no more than short and simple instructions, simple work-related decisions, few workplace changes, and routine supervision. He can have incidental interaction with the general public, coworkers, and supervisors (i.e. contact incidental to the work being performed). He cannot perform teamwork.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on July 5, 1971 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR  04.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

2

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant's substance use disorder (alcohol) is not a contributing factor material to the determination of disability (20 CFR 404.1535).

12. The claimant has not been under a disability, as defined in the Social Security Act, from October 6, 2020, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 29, 30, 32, 36, 37). On February 18, 2025, the Appeals Council denied Plaintiff's request for review (Tr. 1-2), thereby rendering the ALJ's decision the final decision of the Commissioner. *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

On appeal, Plaintiff asks the court to reverse the final decision and to remand the case for further proceedings. (Doc. 1 at p. 2; Doc. 13 at p. 16). Pursuant to 28 U.S.C. § 636, this appeal has been referred to the United States Magistrate Judge for consideration and disposition or recommendation on all pretrial matters. (Doc. 21). The Magistrate Judge now finds that the appeal is ripe for review pursuant to 42 U.S.C. §§ 405(g) in that Plaintiff's supporting brief (Doc. 13) will be construed as a motion for summary judgment and the Commissioner's opposition brief (Doc. 14) will be construed as a competing motion for summary judgment. Upon consideration of the parties' respective submissions, the relevant law, and the record as a whole, the Magistrate Judge concludes that Plaintiff's motion for summary judgment should be denied, that the Commissioner's motion for summary judgment should be granted, and that the final decision should be affirmed.

## II.     Standard of Review and Regulatory Framework

The court's review of the Commissioner's decision is a limited one. Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as

conclusive so long as they are supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted). The court thus may reverse the ALJ's decision only if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). Reversal is not warranted simply because the court itself would have reached a different result. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Despite the deferential nature of its review, however, the court must look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision. *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3] In making a disability determination, the ALJ employs a five-step

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

sequential evaluation process:

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment severe?
>
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). *See also* 20 C.F.R. §§ 404.1520 & 416.920.[4]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four. *Id.* At step five, the burden shifts to the Commissioner, who then must show that there are a significant number of jobs in the national economy that the claimant can perform. *Id.*

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical

---

[4] Because the same sequence applies in both, cases arising under Title XVI are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do so, the ALJ can either use the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40. The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual, and combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*. at 1240.

### III.    Issues on Appeal

Plaintiff raises two issues on appeal: (1) whether the ALJ failed to include limitations for "tactful and constructive supervision" in Plaintiff's RFC and to articulate any limitations to supervisory conduct in the hypothetical posed to the vocational expert; and (2) whether the ALJ failed to conduct a proper materiality analysis regarding drug and alcohol abuse. (Doc. 13 at p. 2).

### IV.    Discussion

#### A.    Dr. DeCollibus's Opinion and RFC Determination

Plaintiff contends that the ALJ failed to properly evaluate the prior administrative medical finding of the state agency psychological consultant, Madelyn Miranda-DeCollibus, Psy.D, whose opinion the ALJ found "partially persuasive." (Doc. 13 at pp. 6-8). Plaintiff argues that the ALJ failed to incorporate certain limitations found by the psychological consultant into the RFC assessment, namely limitations for "tactful and constructive supervision." (*Id*. at pp. 8-9). Plaintiff asserts that although the ALJ found Dr. DeCollibus's opinion partially persuasive, "it was only because the ALJ believed that additional limitations in other domains of function should be

6

added as well" and that "the ALJ unquestionably considered and accepted Dr. DeCollibus's limitation on tactful and constructive supervision." (*Id*. at pp. 8, 10). Plaintiff further contends that the ALJ failed to articulate any limitations in interacting with supervisors in the hypothetical posed to the VE despite repeatedly finding that such limitations were necessary. (*Id*. at p. 11). In response, the Commissioner contends that substantial evidence supports the ALJ's finding that Plaintiff had the RFC to perform light work with additional limitations. (Doc. 14 at p. 5). The Commissioner asserts that the ALJ was under no obligation to address or accept every potential limitation noted in the prior administrative findings and that the limitations included in the RFC are consistent with the record. (*Id*. at pp. 6, 8). The Commissioner further contends that the ALJ's inclusion of "routine supervision" in the hypothetical question encompassed any "incidental interaction" Plaintiff may have with his supervisor in the course of the workday and, as such, the ALJ's omission of the word "supervisors" was no more than harmless error. (*Id*. at p. 9).

Because Plaintiff's claim was filed on December 3, 2021 (Tr. 27), review must be guided by the revised regulations applicable to claims filed on or after March 27, 2017. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The revised regulations no longer use the phrase "treating source" but instead use "your medical source(s)." *See* 20 C.F.R. §§ 404.1520c, 416.920c; *Nix v. Saul*, No. 4:20-CV-00790, 2021 WL 3089309, \*5 (N.D. Ala. July 22, 2021). For claims governed by the revised regulations, the agency thus "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 898 (11th Cir. 2022). "Further, the regulations governing claims filed on

or after March 27, 2017, no longer mandate particularized procedures that the adjudicator must follow in considering opinions from treating sources (*e.g.*, a requirement that adjudicators must 'give good reasons' for the weight given a treating source opinion)." *Nix*, 2021 WL 3089309 at *6 (citing 20 C.F.R. § 404.1520c(b)). Instead, the "new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources." *Simon v. Kijakazi*, No. 8:20-CV-1650, 2021 WL 4237618, *3 (M.D. Fla. Sept. 17, 2021) (emphasis in original) (citing 20 C.F.R. § 404.1520c(a)).

Stated differently, "[the agency] will consider those medical opinions or prior administrative medical findings" using the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a), (c), 416.920c(a), (c). "The most important factors … [used to] evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability ... and consistency." 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2); *Simon*, 2021 WL 4237618 at *3. Therefore, "the ALJ must explain how he or she considered the supportability and consistency factors." *Wynn v. Kijakazi*, No. 8:20-CV-2862, 2022 WL 1115296, *4 (M.D. Fla. Apr. 14, 2022); *Nix*, 2021 WL 3089309 at *6 ("The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors.") (citing 20 C.F.R. § 404.1520c(a)-(c)); *see also* 20 C.F.R. §§ 404.1520c(b), 416.920c(b) ("[The agency] will articulate in [its] determination or decision how persuasive [it] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record."). "However, the ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with

other evidence of record." *Thaxton v. Kijakazi*, No. 1:20-CV-00616, 2022 WL 983156, *8 (M.D. Ala. Mar. 30, 2022); *Williamson v. Kijakazi*, No. 2:20-CV-772, 2022 WL 2257050, *3 (M.D. Ala. June 23, 2022).  Moreover, "'[t]he ALJ may but is not required to explain how he considered the other remaining factors.'" *Id*. at *4 (citation omitted); *see also* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

"'[W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s),' the agency 'will articulate how [it] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis,'" and "the ALJ is 'not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually.'" *Joseph D. v. Comm'r, Soc. Sec. Admin.*, No. 1:22-CV-152, 2023 WL 12148409, *8 (N.D. Ga. Mar. 16, 2023) (citing 20 C.F.R. §§ 404.1520c(b)(1) [and 416.920c(b)(1)]); *Davis v. Comm'r of Soc. Sec.*, No. 22-81728-CIV, 2024 WL 1183451, *10 (S.D. Fla. Jan. 17, 2024), *aff'd*, No. 24-10771, 2025 WL 1123853 (11th Cir. Apr. 16, 2025) ("On its face, [20 C.F.R. § 404.1520c(b)(1)] applies when one medical source provides multiple opinions," and "[i]t is clear that this regulation cannot be relied on by the Commissioner to permit an ALJ to group together opinions from multiple medical sources in a single analysis.").  Further, "[t]he ALJ is under no obligation to 'bridge' every piece of evidence he finds inconsistent with a specific opinion. ...  Nothing requires the ALJ to discuss every piece of evidence so long as the decision does not broadly reject evidence in a way that prevents meaningful judicial review." *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366, 2021 WL 4261218, *9 (M.D. Fla. Sept. 20, 2021) (citations omitted); *see also Moore v. Kijakazi*, No. 8:23-CV-206, 2023 WL 8187216, *4 (M.D. Fla. Nov. 27, 2023) ("[A] 'logical bridge' simply means that 'an ALJ must articulate at some minimum level, her analysis of the evidence.'  Ultimately, this

9

requirement does not alter the substantial evidence standard.") (citations omitted); *Weidlich v. Comm'r of Soc. Sec.*, No. 22-13309, 2023 WL 8015753, *2 (11th Cir. Nov. 20, 2023) ("[An] ALJ must explain and address any conflicts between the RFC and medical opinions.").

An RFC determination is an assessment of what a claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Phillips*, 357 F.3d at 1238-39; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. §§ 404.1545(a), 416.945(a) ("Your residual functional capacity is the most you can still do despite your limitations."). "[T]he task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor." *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *Hollingsworth v. Comm'r of Soc. Sec.*, 846 F. App'x 749, 753 (11th Cir. 2021) ("A claimant's RFC is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter is considered, it is not dispositive."); *Bouie v. Astrue*, 226 F. App'x 892, 894 (11th Cir. 2007) ("An ALJ may reject the opinion of any physician when the record supports a contrary conclusion. The resolution of conflicting evidence is the function of the ALJ, not the Court.") (citation omitted); *Frank v. Comm'r of Soc. Sec.*, No. 2:20-CV-962, 2022 WL 598036, *8 (M.D. Fla. Feb. 10, 2022), *report and recommendation adopted*, No. 2:20-CV-962, 2022 WL 596833 (M.D. Fla. Feb. 25, 2022) ("[T]here is no requirement that an ALJ base the RFC finding on a medical source's opinion."); *Tolbert v. Kijakazi*, No. 3:21-CV-33, 2022 WL 4591646, *2 (M.D. Ala. Sept. 29, 2022) ("An ALJ may 'distill a claimant's RFC from an amalgamation of the record as a whole, without requiring a specific medical opinion to articulate a specific functional limitation.'") (citation omitted). And "[i]t is 'solely the province of the [Commissioner]' to resolve conflicts in the evidence and assess the credibility of witnesses." *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) (citation omitted).

10

Although an RFC determination must be supported by substantial evidence, the ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence in the record" in order for the determination to be affirmed.  *See Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is 'not enough to enable [the district court ... ] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'") (citation omitted).  All that is required is that "the ALJ state with clarity his reasons for his decision."  *Sturdivant v. Soc. Sec. Admin., Comm'r*, No. 22-13952, 2023 WL 3526609, *4 (11th Cir. May 18, 2023).  Moreover, "to find that the ALJ's RFC assessment is supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician."  *Smoke v. Kijakazi*, No. CV 21-0206, 2022 WL 721532, *4 (S.D. Ala. Mar. 9, 2022).

When a claimant has presented a colorable claim of mental impairments, the ALJ is required to complete a Psychiatric Review Technique Form ("PRT") to evaluate the severity of the mental impairments.  *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005); 20 C.F.R. §§ 404.1520a, 416.920a.  Applying the PRT, the ALJ must rate how a claimant's mental impairments impact four broad functional areas known as the "paragraph B criteria": "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself."  20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1324 (11th Cir. 2021).  In rating the degree of limitation in each of those areas, the ALJ utilizes the following five-point scale: none, mild, moderate, marked, and extreme.  20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).  "The ALJ must

11

incorporate these results into the findings and conclusions." *Burns v. Comm'r, Soc. Sec. Admin.*, No. 22-11181, 2023 WL 5607883, *2 (11th Cir. Aug. 30, 2023); *Enriquez v. O'Malley*, No. 8:23-CV-0374, 2024 WL 533150, *3 (M.D. Fla. Jan. 24, 2024), *report and recommendation adopted*, No. 8:23-CV-374, 2024 WL 519764 (M.D. Fla. Feb. 9, 2024) ("[T]he ALJ incorporates the results of the PRT into the findings at steps four and five of the sequential evaluation process."); 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4). "The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of mental impairment(s)" and "must include a specific finding as to the degree of limitation in each of the functional areas described [above]." 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

"The ALJ's analysis as to the Paragraph B criteria is part of steps two and three of the sequential analysis; it is distinct from the more detailed inquiry as to a claimant's RFC at step four." *Buckwalter*, 5 F.4th at 1325; 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b). "To find the presence of a listing-level mental impairment, the ALJ must find that a claimant has an 'extreme' limitation in one of the four functional areas or a 'marked' limitation in two." *Id*. A "mild" limitation indicates that a claimant's functioning is "slightly limited," whereas a "moderate limitation indicates that a claimant's functioning is "fair." *Id*.; 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(2)(b), (c). The ALJ considers all of the relevant medical and non-medical evidence in evaluating a claimant's mental disorder, including information about the claimant's daily activities at home and in the community. *Id*.; 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(3)(a)-(b). "The ALJ is required to incorporate the results of the special technique into her findings and conclusions," but the technique "is separate from the ALJ's evaluation of the claimant's RFC assessment, the latter of which is an assessment of the claimant's ability to do

12

work despite his impairments.  The mental RFC assessment is a more detailed assessment of the claimant's functionality." *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013) (internal citations omitted).  "And at step five in the sequential analysis, an ALJ must account—explicitly or implicitly—for any moderate limitations in one or more of these domains when soliciting opinion testimony from a vocational expert, or the ALJ must indicate in the decision that the evidence otherwise supports the RFC that underlies the expert's opinions."  *Gibson v. Comm'r of Soc. Sec.,* No. 2:23-CV-154, 2024 WL 1231313, *7 (M.D. Fla. Mar. 22, 2024) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011)); *Buckwalter*, 5 F.4th at 1325 ("[T]hough the analysis at steps two and three is less detailed, an ALJ is still required to account for a claimant's moderate limitation in the area of concentration, persistence, or pace in a hypothetical posed to the VE.").

Plaintiff argues that "[t]he ALJ did not expressly reject any portion of Dr. Madelyn Miranda-DeCollibus's opinion and specifically found that her opinion was supported with an explanation of the evidence used to formulate it," and "[t]herefore the only reasonable conclusion is that the ALJ accepted the assessments contained in the medical opinion [of] Dr. Madelyn Miranda-DeCollibus."  (Doc. 13 at pp. 8-9).  Plaintiff asserts that "the ALJ's conflation of tactful and constructive supervision for 'incidental' and 'routine' supervision fails to capture the scope of restriction portrayed by Dr. DeCollibus and accepted by the ALJ"—as "'incidental contact' addresses the <u>duration</u> of each interaction with coworkers and supervisors, [and] 'tactful and constructive supervision' further modifies the <u>quality</u> of interactions with supervisors, minimizing confrontation and disagreement that is otherwise quite plausible even at the incidental level." (*Id*. at p. 9) (emphasis added).

Dr. DeCollibus, in considering the "paragraph B" criteria pursuant to the PRT at the initial review level, found that Plaintiff had moderate limitations in the areas of interacting with others and adapting or managing oneself and "mild" limitations in understanding, remembering, or applying information and concentrating, persisting, or maintaining pace. (Tr. 83). As to social interaction limitations, Dr. DeCollibus opined that "[c]ontact with the public should be infrequent and non-intensive" and that "[s]upervision should be tactful and constructive." (Tr. 87). Plaintiff asserts that medical evidence supports Dr. DeCollibus's assessment:

> Medical records from the Department of Veteran's Affairs dated March 10, 2023, showed that a PCT Consult for Intensive PTSD Treatment documented Plaintiff experiencing anxiety and irritability, intrusive thoughts about trauma, flashbacks, nightmares, hypervigilance and paranoia (Tr. 523). Moreover, the consult reveals that Plaintiff and his wife are "temporarily separated at the moment 'because of things [he is] dealing with,'" (Tr. 524), reaffirming that Plaintiff's conditions negatively affect his interactions/relationships with others. Progress Notes from Central Alabama HCS further note that Plaintiff "[e]xhibited difficulty attending to and engaging in treatment-relevant discussions and activities" (Tr. 578). Plaintiff's wife attested that Plaintiff "can't go out to family functions ... [d]oesn't socialize with friends and family" and that "[h]e always thinks someone is out to get him" (Tr. 240, 244). She explains that he "got banned from [the] military base because of altercation with coworker" (Tr. 245). Progress notes from Central Alabama HCS between August 2023 and January 2024 note Plaintiff having had an "argument with [a] neighbor" after which the police were called. (Tr. 580, 648). Mental health records from the Department of Veterans Affairs dated January 10, 2024, showed that Plaintiff was experiencing nightmares and that he wakes up from nightmares screaming at night (Tr. 580). He becomes hypervigilant in certain situations, and he gets startled easily (Tr. 580). He is paranoid and obsessed with checking (Tr. 580). Plaintiff reported anger and irritability and stated that his anger was triggered by a friend recently (Tr. 580).

(Doc. 13 at pp. 9-10).

In assessing the "paragraph B" criteria, the ALJ rated Plaintiff as having "moderate" limitations in each:

> In understanding, remembering or applying information, the claimant has a moderate limitation. The claimant reported trouble remembering, following instructions, and understanding (Ex. 3E). His wife said that the claimant had trouble remembering, following instructions, and understanding (Ex. 4E).

14

However, in general, the claimant answered questions appropriately, was fully oriented, showed no short or long-term memory impairments, and had logical, coherent, and goal-oriented thought processes (Ex. 2F/9; 3F/111).

In interacting with others, the claimant has a moderate limitation. The claimant reported trouble getting along with others (Ex. 3E). The claimant's wife said that the claimant had trouble tolerating crowds and was easily aggravated (Ex. 4E). In November of 2022, the claimant reported agitation, but, at that time, the claimant answered questions appropriately, maintained good eye contact, was easily engaged, and showed clear and coherent speech (Ex. 2F/9). In March of 2023, the claimant reported feeling angry and edgy, but he was open and friendly, with normal speech, normal eye contact, a full affect, and a euthymic mood (Ex. 3F/110-111). In August of 2023, the claimant maintained good eye contact and was easily engaged, with clear and coherent speech (Ex. 3F/60).

With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. The claimant said that he had poor focus, with difficulty concentrating, completing tasks, and following instructions (Ex. 3E). His wife noted that the claimant had trouble concentrating, completing tasks, and following instructions (Ex. 4E). In addition, the claimant reported agitation and frustration (Ex. 2F/8). Nevertheless, the claimant was generally engaged and oriented, with normal attention and logical, coherent, and goal-oriented thought processes (Ex. 2F/9; 3F/111).

As for adapting or managing oneself, the claimant has experienced a moderate limitation. The claimant noted depression, with trouble handling stress and changes in routine (Ex. 3E). In addition, his wife said that the claimant was easily aggravated and had difficulty handling stress and changes in routine (Ex. 4E). The claimant also reported problematic drinking, poor sleep, and nightmares (Ex. 2F/8; 3F/110). In general, however, the claimant showed at least fair judgment, impulse control, and insight, with appropriate dress and grooming (Ex. 2F/9; 3F/110-111).

(Tr. 31, 231-33, 239-245, 327-28, 476, 526-27). The ALJ then explained the following:

The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(Tr. 32). *See* 20 C.F.R. § 404.1520(a)(4), 404.1520a(b)-(d). And the ALJ found Dr. DeCollibus's

opinion "partially persuasive" in that regard:

15

State agency psychological consultant Madelyn Miranda DeCollibus, Psy.D. reported that the claimant could have infrequent and non-intensive contact with the public, should have tactful and constructive supervision, and could tolerate infrequent and gradually introduced changes in the workplace (Ex. 2A). As a State agency consultant, Dr. DeCollibus supported her opinion with an explanation of the evidence used to formulate it. In part, her assessment is consistent with the evidence of record because the claimant reported agitation, irritability, alcohol abuse, frustration, depression, anxiety, poor sleep, nightmares, and anger (Ex. 2F/72; 3F/110). However, this same evidence is also consistent with limitations not reported by Dr. DeCollibus, such as a limitation to simple, routine tasks, with simple, short instructions. Therefore, the above assessment is only partially persuasive.

(Tr. 35).

In assessing the mental treatment records, the ALJ noted the following:

In terms of his mental health, in January of 2022, the claimant reported feeling easily agitated and irritable. In addition, he reported daily alcohol use, along with PTSD symptoms (Ex. 2F/72). He was noted to have depression, PTSD, and alcohol abuse disorder at that time (Ex. 2F/74). In November of 2022, the claimant reported ongoing depression, agitation, anxiety, and frustration, with problematic drinking. Claimant's doctor counseled him on the importance of cessation of substance use (alcohol) and noted that alcohol use is counterproductive to treatment of mental illness. Although substance abuse (alcohol) … and alcohol dependence are noted in the record, the claimant reported decreased use of alcohol, stating that he currently has 2 to 3 drinks per week, but drunk more heavily in the past. (Exs. 4F/41, 52, 44, 149, 142, 143, and 153; 4F/10; 2F, 28 and 46; and 3F/15 and 58). The claimant further reported poor sleep, with nightmares (Ex. 2F/8). Upon examination, the claimant answered questions appropriately, maintained good eye contact, was easily engaged, and showed appropriate dress. His speech was clear and coherent, and the claimant was fully oriented (Ex. 2F/9).

In March of 2023, the claimant noted feeling angry and edgy, with ongoing nightmares. At that time, he showed appropriate dress and grooming, and he was open and friendly, with normal speech. The claimant made normal eye contact and had normal motor activity. His affect was full, and the claimant showed a euthymic mood and normal attention (Ex. 3F/110). The claimant showed no impairment in short and long-term memory, and he had logical, coherent, and goal-oriented thought processes. His judgment and impulse control were fair, and the claimant had fair insight, with high motivation (Ex. 3F/111). In August of 2023, the claimant reported some improvement in his sleep. At that time, he maintained good eye contact and was easily engaged, with clear and coherent speech (Ex. 3F/60).

16

> The claimant's statements about the intensity, persistence, and limiting effects of his symptoms are inconsistent with the medical evidence and other evidence in the record. The record shows the claimant underwent treatment and takes medications for his impairments. Just shortly before the alleged onset date of disability, in June of 2020, the claimant showed no swelling in the right shoulder and had full right shoulder range of motion (Ex. 1F/18). In September of 2020, the claimant showed full strength in all muscle groups tested, without swelling tenderness, crepitus, or range of motion deficits in the right shoulder, and special testing of his right shoulder was normal (Ex. 1F/15). However, in March 2022, the claimant rated his pain as 8 out of 10 on the pain scale, and he had restricted range of motion, positive impingement, subacromial tenderness, and positive Jobe's for pain and weakness in his right shoulder. (Exs. 2F/36). Regarding his mental health, in November of 2022, the claimant answered questions appropriately, maintained good eye contact, was easily engaged, showed appropriate dress, had clear and coherent speech, and was fully oriented (Ex. 2F/9). In March of 2023, the claimant was open and friendly, with appropriate dress and grooming, normal speech and eye contact, normal motor activity, intact short and long-term memory, normal attention, a euthymic mood, logical, coherent, and goal-oriented thought processes, fair judgment, impulse control, and insight, and high motivation (Ex. 3F/10-11). In August of 2023, the claimant reported some improvement in his sleep, and he maintained good eye contact and was easily engaged, with clear and coherent speech (Ex. 3F/60). Finally, the claimant said that he could prepare simple meals, iron, dust, wash dishes, and handle money (Ex. 3E).

(Tr. 34-35). The ALJ determined that "the medical evidence and other evidence in the record, along with [Plaintiff's] daily living activities at Ex. 3E, is not consistent with the claimant's allegations regarding his disabling-level severity of his symptoms." (Tr. 35). In conclusion, the ALJ stated, in part, as follows:

> In sum, the above residual functional capacity assessment is supported by the medical evidence, opinion evidence, and other evidence in the record. ... The claimant has also experienced symptoms of alcohol use disorder, depressive disorder, anxiety, and PTSD, such as impaired memory and concentration, frustration, anger, irritability, poor sleep, nightmares, agitation, and trouble handling stress and change in routine. Therefore, he is limited to unskilled work, as defined above, can have only incidental interaction with the general public, coworkers, and supervisors, and cannot perform teamwork. Based on the above discussion of the claimant's impairments and related symptoms, the entirety of the record supports the residual functional capacity listed herein.

(Tr. 35).

As stated above, the ALJ—not a doctor—has the duty to determine a claimant's RFC. *Moore*, 649 F. App'x at 945. Accordingly, an ALJ "is not required to base[] [the] RFC on a doctor's opinion." *McCarver v. Comm'r of Soc. Sec.*, No. 4:20-CV-1053, 2022 WL 860190, *6 (N.D. Ala. Mar. 22, 2022) (citing *Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014)); *Vilches v. Kijakazi*, No. 3:21-CV-15, 2022 WL 11455775, *2 (M.D. Ala. Oct. 19, 2022) ("Indeed, 'an ALJ's RFC assessment need not match or mirror the findings or opinions of any particular medical source ... because the reasonability of assessing the RFC rests with the ALJ.'") (citation and internal quotation marks omitted). While state agency medical or psychological consultants are considered experts in Social Security disability evaluation, "[a]dministrative law judges are not required to adopt any prior administrative findings, but they must consider this evidence according to §§ 404.1520b, 404.1520c, and 404.1527, as appropriate." 20 C.F.R. § 404.1513a(b)(1); 20 C.F.R. 416.913a(b)(1). The regulations provide that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). "Thus, an ALJ need not adopt every part of an opinion that the ALJ finds persuasive." *Rivera Misla v. Comm'r of Soc. Sec.*, No. 6:20-CV-1076, 2021 WL 2417084, *2 (M.D. Fla. June 14, 2021); *Vilches*, 2022 WL 11455775, *3 ("Moreover, the ALJ provides an RFC by considering the entirety of the evidence rather than a single opinion—not simply regurgitating in the RFC from even persuasive medical opinions, and some slight deviation may be appropriate."); *see also Szoke v. Kijakazi*, No. 8:21-CV-502, 2022 WL 17249443, *9 n.12 (M.D. Fla. Nov. 28, 2022) (collecting cases). Nor is an ALJ "compelled to 'specifically refer to every piece of evidence in his decision.'" *Id*. at *9 (citation omitted).

18

Here, the ALJ was under no obligation to adopt every part of Dr. DeCollibus's opinion. "The regulations do not require ALJs to adopt into an RFC every part of an opinion that they otherwise find persuasive." *Guth v. Comm'r of Soc. Sec.*, No. 2:21-CV-106, 2022 WL 8211404, *9 (M.D. Fla. Aug. 5, 2022), *report and recommendation adopted*, No. 2:21-CV-106, 2022 WL 4115784 (M.D. Fla. Sept. 9, 2022) (citing 20 C.F.R. §§ 404.1520c(a), 416.920c(a)); *see also Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-CV-1108, 2019 WL 4686800, *8 (M.D. Fla. Sept. 26, 2019) ("[T]he ALJ's RFC assessment did not need to match or mirror the findings or opinions of any particular medical source ... because the responsibility of assessing the RFC rests with the ALJ."); *Tolbert*, 2022 WL 4591646 at *2 ("There is no requirement that an ALJ include every limitation from a medical opinion verbatim in an RFC determination or specifically address every aspect of an opinion or every piece of evidence in the record."); *Powell v. Kijakazi*, No. CV 321-066, 2022 WL 4000719, *5 (S.D. Ga. Aug. 9, 2022), *report and recommendation adopted*, No. CV 321-066, 2022 WL 3970838 (S.D. Ga. Aug. 31, 2022) ("[F]inding a medical opinion persuasive does not require the ALJ to fully incorporate that opinion into the RFC."); *Williamson*, 2022 WL 2257050 at *3.

The ALJ specifically found Dr. DeCollibus's opinion to be only "partially persuasive." The ALJ stated that "in part" Dr. Decollibus's assessment was consistent with the evidence of record because of Plaintiff's reported symptoms. (Tr. 35). The ALJ did not detail which aspects of Dr. DeCollibus's assessment the ALJ found were consistent with evidence of record. In any event, the ALJ's limiting Plaintiff to "unskilled work activity, defined as simple, routine tasks, involving no more than short and simple instructions, simple work-related decisions, few workplace changes, and routine supervision," and to having "incidental interaction with the general public, coworkers, and supervisors (i.e. contact incidental to the work being performed),"

19

and to not being able to "perform teamwork," was effectively equivalent to Dr. DeCollibus's limitation to infrequent and non-intensive contact with the public and "tactful and constructive" supervision. (Tr. 32, 87). The ALJ noted that while Plaintiff reported feeling angry and edgy, Plaintiff "was open and friendly, with normal speech, normal eye contact, a full affect, and a euthymic mood" and "maintained good eye contact and was easily engaged, with clear and coherent speech." (Tr. 31, 34). The ALJ also noted that, in general, Plaintiff "showed at least fair judgment, impulse control, and insight, with appropriate dress and grooming." (Tr. 31, 34). Thus, the record as a whole reflects that the ALJ properly considered Dr. DeCollibus's opinion, along with the rest of the evidence, in fashioning Plaintiff's RFC. *See, e.g, Hebert v. O'Malley*, No. 3:23-CV-24008, 2024 WL 4291499, \*15 (N.D. Fla. Sept. 25, 2024) ("The Eleventh Circuit … does not take issue with an ALJ's RFC finding that does not mirror persuasive prior administrative medical findings.") (citing *Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, \*6 (11th Cir. Jan. 10, 2022) (affirming RFC finding as supported by substantial evidence even though the ALJ limited claimant to "occasionally interact with supervisors, coworkers, and the public," a limitation plaintiff argued was in conflict with persuasive state agency consultants' prior administrative medical findings that indicated claimant could have only "limited and superficial social interaction")).

In *Williams v. Saul*, 532 F. Supp. 3d 1226, 1233 (M.D. Ala. 2021), the plaintiff alleged that the ALJ improperly discredited the medical opinions limiting her "to helpful, not threatening, and supportive supervisors" because the ALJ only limited her "to occasional interaction with supervisors and the public" and, in doing so, failed to address the type of interaction that she could have with supervisors. Relying on the Eleventh Circuit's decision in *Shaw v. Astrue*, 392 F. App'x 684 (11th Cir. 2010), the court concluded that the ALJ's failure to specifically

address the plaintiff's ability to respond to coworkers and to specifically limit the plaintiff's quality of interaction with her supervisors was not inconsistent with the ALJ's RFC determination that limited the plaintiff to light work, simple routine tasks, and occasional interaction with supervisors and the public.  532 F. Supp. 3d at 1233.  *See also Shaw*, 392 F. App'x at 686-87 (where the ALJ limited the plaintiff's RFC to "light exertional work, including work with simple instructions and no more than limited public contact," and the plaintiff argued that the ALJ improperly discredited the examining doctor's opinion that the plaintiff "had poor abilities to interact with supervisors or to deal with work stress when making the RFC finding," the Eleventh Circuit determined that although the ALJ did not specifically address the findings regarding poor functionality in dealing with supervisors or stress, the plaintiff's RFC finding was not inconsistent with those findings).[5]  *See also Brothers v. Comm'r of Soc. Sec.*, 648 F. App'x 938, 939 (11th Cir. 2016) (where ALJ gave great weight to state psychologist who opined that plaintiff had "some limitation in understanding and remembering detailed instructions, [yet could] sustain attention for two-hour periods" to "complete tasks" with occasional reminders by a supervisor with whom plaintiff might "develop interpersonal problems" but could "maintain basic social interactions," and where the ALJ found that plaintiff could work only where no production rate or pace was required, could perform only simple routine tasks, and could work where only occasional interaction with the public and co-workers was required, the court held that the ALJ was not required to refer to supervisors when the RFC assessment and the hypothetical question included a restriction on plaintiff's social interaction in the workplace); *Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 542 (11th Cir. 2016) (per curiam) (finding moderate

---

[5]  Both the *Shaw* and *Williams* courts further concluded that even if the ALJ failed to specifically address the medical opinions in question, any "error" was harmless.  *Shaw*, 392 F. App'x at 687 n.1 and *Williams*, 532 F. Supp. 3d at 1233 n.5.

limitations in taking criticism from supervisors adequately accounted for in RFC limiting plaintiff to "short, simple, instructions" and "only occasional contact with co-workers and the general public on routine matters"); *Kitchens v. Saul*, No. CV 319-039, 2020 WL 4196186, *3 (S.D. Ga. June 26, 2020), *report and recommendation adopted*, No. CV 319-039, 2020 WL 4194012 (S.D. Ga. July 21, 2020) (same); *Cerrato v. Comm'r of Soc. Sec.*, No. 5:22-CV-397, 2024 WL 323381, *2-3 (M.D. Fla. Jan. 29, 2024) (where two state agency psychological consultants whom the ALJ found "partially persuasive" opined that plaintiff had a moderate limitation in accepting instructions and responding appropriately to criticism from supervisors, the court found that limiting plaintiff to occasional contact with coworkers and the public, to remembering simple information, and to performing simple routine work tasks was consistent with a limitation on interacting with supervisors); *Sheldon v. Comm'r of Soc. Sec.*, No. 8:15-CV-1831, 2016 WL 4120444, *3 (M.D. Fla. Aug. 3, 2016) ("[A]lthough the ALJ did not specifically include a limitation regarding the level of interaction with supervisors, the ALJ's hypothetical and RFC sufficiently accounts for Plaintiff's moderate limitations in social functioning by limiting Plaintiff to no more than occasional interaction with crowds, the public, and co-workers.").  Accordingly, the court concludes that the RFC was not inconsistent with Dr. DeCollibus's opinion.

Plaintiff argues that even if the court finds the limitations in the RFC equivalent to Dr. DeCollibus's limitations, a review of the record reveals that the ALJ failed to articulate any limitations in interacting with supervisors in the hypothetical posed to the VE.  (Doc. 13 at p. 11). "For a VE's testimony to constitute substantial evidence, the ALJ must hypothetically inquire as to all of the claimant's impairments, and the ALJ is required to present the VE with all of the claimant's limitations, both physical and mental, in order for the VE's testimony to constitute substantial evidence supporting the ALJ's decision." *Stacey L. v. Comm'r, Soc. Sec. Admin.*,

22

No. 1:20-CV-0570, 2022 WL 17078641, *11 (N.D. Ga. Mar. 9, 2022) (citing *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)).   However, the "hypothetical need only include 'the claimant's impairments,' not each and every symptom of the claimant." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007); *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. Appx 875, 879 (11th Cir. 2013) ("[A]n ALJ is not required to instruct the VE to assume conditions that he does not find to exist.").

Here, the RFC states in part that Plaintiff "can have incidental interaction with the general public, coworkers, and <u>supervisors</u> (i.e. contact incidental to the work being performed). He cannot perform teamwork."  (Tr. 31) (emphasis added).  The ALJ posed in part the following hypothetical:

> This hypothetical individual is limited to unskilled work activity defined as normal routine tasks, involving no more than short, simple instructions and making simple work-related decisions with few workplace changes and routine supervision.  This hypothetical individual is limited to incidental interaction with coworkers and the general public and by incidental I mean incidental to the work that is being performed and no teamwork.

(Tr. 74).

While Plaintiff did not include the word "supervisors" in the hypothetical, the ALJ did include "supervision."  Based on the case authority cited above, the hypothetical to the VE implicitly incorporated "supervisor" and accurately contained the limitations determined by the ALJ and set forth in the RFC, which was supported by substantial evidence.  *See Shaw*, 392 F. App'x at 686-87; *Brothers*, 648 F. App'x at 939; *Ybarra*, 658 F. App'x at 542; *Williams*, 532 F. Supp. 3d at 1233; *Kitchens*, 2020 WL 4196186 at *3; *Cerrato*, 2024 WL 323381 at *2-3; *Sheldon*, 2016 WL 4120444, *3; *Adams v. O'Malley*, No. 5:22-CV-44, 2024 WL 1261293, *8 (S.D. Ga. Mar. 8, 2024), *report and recommendation adopted*, No. 5:22-CV-44, 2024 WL 1258222 (S.D. Ga. Mar. 25, 2024) ("The Eleventh Circuit has explained an RFC and

a VE hypothetical may account for the same limitations 'even if they did not use precisely the same language.'") (quoting *Ybarra*, 658 F. App'x at 542 n.5).

Moreover, any exclusion of social interaction involving supervisors was harmless as such limitation would not affect the types of jobs that the VE determined Plaintiff could perform. Two of the jobs that the VE testified that Plaintiff could perform were electronics worker (DICOT 726.687-010), 1991 WL 679633, and assembler, products I (DICOT 706.684-022), 1991 WL 679050, accounting for 71,000 and 59,000 jobs, respectively, in the national economy. According to Appendix B of the DOT, the fifth number of the nine-digit code reflects a job's relationship to people. *Lane v. Colvin*, 643 F. App'x 766, 770 n.1 (10th Cir. 2016) (citing Dictionary of Occupational Titles, App. B—Explanation of Data, People, & Things, 1991 WL 688701 (4th ed., rev'd 1991)). "The DOT rates the amount of interaction with people on a scale of 0–8, with 8 representing the lowest possible level of human interaction that exists in the labor force." *Id.* The DOT describes "8 Taking Instructions-Helping" as a need to take instructions as only "[a]ttending to the work assignment instructions or orders of supervisor" with "[n]o immediate response required unless clarification of instructions or orders is needed." *Lane*, 643 F. App'x at 770 n.1 (citing Appendix B of the DOT, 1991 WL 688701). The jobs of electronics worker and assembler are defined to list "Taking Instructions-Helping" as "Not Significant." *See* DICOT 726.687-010, 1991 WL 679633, and DICOT 706.684-022, 1991 WL 679050. Thus, these job descriptions are consistent with having "no more than occasional interaction with coworkers and the general public." *See Lane*, 643 F. App'x at 768-69 (where the RFC limited plaintiff to low stress work, which included involving no interaction with the public, the court concluded that it did not need to resolve whether the ALJ should have expressly included in the RFC the doctor's limitation on frequent and prolonged contact with supervisors and co-workers,

24

because the capacity required to do the jobs identified by the ALJ was not contrary to the doctor's limitations regarding interaction with supervisors and co-workers and thus, any error was harmless); *Scott C. v. Comm'r of Soc. Sec.*, No. 2:20-cv-00109, 2021 WL 2682276, *4-5 (D. Vt. June 30, 2021) (where the plaintiff argued that the ALJ erred in finding that he could engage in routine and ordinary social interactions with coworkers, supervisors, and the general public in the RFC because the state agency consultants opined that he was limited to engaging in "brief, infrequent, and non-intense interactions with supervisors and coworkers," the court concluded that although the ALJ, who found the opinion of the state agency consultants persuasive, erred in failing to explain his rejection of certain elements of the medical opinions that he found persuasive but that such error was harmless because the positions identified by the VE included the level 8 position, which did not require significant social interaction as explained in the DOT); *Lickey v. Kijakazi*, No. 3:22-CV-218, 2023 WL 12031342, *5-6 (N.D.W. Va. July 17, 2023), *report and recommendation adopted*, No. 3:22-CV-218, 2024 WL 5411162 (N.D.W. Va. Nov. 21, 2024) (citing that courts across "the country have consistently rejected arguments based on a missing social interaction limitation in the RFC when the ALJ relies on occupations in step five that accommodate such limited interaction," the court concluded that modifying the RFC from "occasional interaction with coworkers and/or supervisors" to "occasional and brief interaction with coworkers and/or supervisors" would not change the outcome of the ALJ's ultimate finding of disability and that any error by the ALJ in excluding "brief" interactions from the RFC and failing to explain that exclusion was harmless to the ultimate finding of disability); *Crisco v. Kijakazi*, No. 1:22CV38, 2023 WL 2142681, *7-9 (M.D.N.C. Feb. 21, 2023) (finding no harmful error when the ALJ erred in not adopting state agency psychologists' restriction to "brief, superficial" contact with coworkers and supervisors because the ALJ found plaintiff could perform

garment sorter and retail marker occupations even if the brief and superficial limitations had been included in the RFC); *Wagner v. Berryhill*, No. CV 17-5698, 2018 WL 3956485, *3-4 (C.D. Cal. Aug. 14, 2018) (same); *Ridley G. v. Comm'r of Soc. Sec.*, No. 1:20CV773, 2021 WL 4307507, *8, 13 (N.D.N.Y.  Sept. 22, 2021) (deciding that RFC restriction to no interaction or tandem tasks with coworkers harmonizes with jobs with DOT level 8 interaction); *Shorey v. Astrue*, No. 1:11CV414, 2012 WL 3475790, *6 (D. Me. July 13, 2012) (holding that "inclusion of a limitation to occasional, brief, and superficial contact with coworkers and supervisors in the [ALJ]'s hypothetical question would not have excluded" jobs with a DOT "People" rating of 8); *Eldridge v. Berryhill*, No. 16-5289, 2018 WL 1092025, *2 (W.D. Ark. Feb. 28, 2018) (finding jobs categorized by DOT as involving level 8 interaction consistent with restrictions to "limited contact with the general public" and "incidental contact with co-workers"); *Reese v. Saul*,  No. 3:18-CV-442, 2020 WL 1312703, *14 (E.D. Tenn. Mar. 19, 2020) ("A social interaction rating of not significant is consistent with limitations to occasional, brief and superficial contact with co-workers, supervisors, and the public.") (citations and internal quotation marks omitted); *Keene v. Kijakazi*, No. 1:21CV289, 2022 WL 6175173, *5-6 (M.D.N.C. Oct. 7, 2022), *report and recommendation adopted*, No. 1:21CV289, 2023 WL 1102603 (M.D.N.C. Jan. 30, 2023) (finding that the ALJ's failure to include limitations in the RFC to accommodate the consultants' restriction to "minimal social interaction" was harmless error because the three jobs the ALJ found plaintiff able to perform contained a "People" rating of 8, which reflected the lowest possible level of human interaction that exists in the labor force); *Wilson v. Saul*, No. 1:19CV1089, 2020 WL 6293132, *4 (M.D.N.C. Oct. 27, 2020) ("[E]ven assuming the ALJ erred here by failing to include additional social limitations in the RFC ... , any error would be harmless because the jobs the ALJ concluded that [the p]laintiff could perform do not require significant social interactions.  In fact,

26

the [DOT's] descriptions of the jobs identified by the VE list interaction with 'People' as being 'Not Significant.'"); *Mary G. v. Bisignano*, No. CV 24-1473, 2025 WL 2097423, *4 (D. Md. July 24, 2025) (same).

In sum, for the collective reasons discussed above, the court concludes that the ALJ's RFC determination was supported by substantial evidence. "[T]here is no requirement an ALJ adopt every limitation from persuasive opinions," and "'there is no legal requirement that an ALJ explain each limitation or restriction he adopts or fails to adopt' from a persuasive opinion." *Donnie T. v. Bisignano*, No. 2:24-CV-229, 2025 WL 2655447, *7 (M.D. Ala. Sept. 16, 2025) (citation omitted); *Normand v. Kijakazi*, No. 1:23-CV-337, 2023 WL 8719445, *4 (M.D. Ala. Dec. 18, 2023). "A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive." *Beegle v. Soc. Sec. Admin., Com'r*, 482 F. App'x 483, 486 (11th Cir. 2012). Further, based on the case authority cited, even if the ALJ failed to clearly address or explicitly incorporate aspects of Dr. DeCollibus's opinion in the RFC and/or in the hypothetical, any such error was harmless. *Shaw*, 392 F. App'x at 687 n.1; *Williams*, 532 F. Supp. 3d at 1233 n.5; *Lane*, 643 F. App'x at 768-69; *Scott C.*, 2021 WL 2682276 at *4-5.

Plaintiff "'must do more than point to evidence in the record that supports h[is] position; [he] must show the absence of substantial evidence supporting the ALJ's conclusion.'" *Thompkins v. Kijakazi*, No. 2:21-CV-216, 2022 WL 2517185, *7 (M.D. Ala. July 6, 2022) (quoting *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam)) (brackets added). "The fact that Plaintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence." *Lanier v. Colvin*, No. CV414-004, 2015 WL 3622619,

*1 (S.D. Ga. June 9, 2015) (citing *Crawford*, 363 F.3d at 1158-59); *Bouie v. Astrue*, 226 F. App'x 892, 894 (11th Cir. 2007) ("An ALJ may reject the opinion of any physician when the record supports a contrary conclusion. The resolution of conflicting evidence is the function of the ALJ, not the Court.") (citation omitted). Put simply, "[t]o the extent Plaintiff disagrees with the ALJ's interpretation of that evidence, that is not a ground for remand." *Horne v. Comm'r of Soc. Sec.*, No. 2:20-CV-181, 2021 WL 3023679, *5 (M.D. Fla. June 28, 2021), *report and recommendation adopted*, No. 2:20-CV-181, 2021 WL 3022727 (M.D. Fla. July 16, 2021) (citing *Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014)); *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) ("'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner.' 'If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it.'") (citations omitted).

### B.    Materiality Analysis Regarding Drug and Alcohol Abuse

Plaintiff takes issue with the ALJ's conclusion that "substance use disorder (alcohol) is not a contributing factor material to the determination of disability (20 CFR 404.1535)." (Doc. 13 at. p. 14) (quoting Tr. 37). Plaintiff argues that despite evidence in the record of alcohol use disorder the ALJ failed to properly conduct the required two-step materiality analysis—as the ALJ appears to have reached a conclusion about drug and alcohol abuse materiality without first establishing that Plaintiff was disabled. (*Id*. at p. 15). Plaintiff further argues that the RFC assessment does not identify which limitations are tied to alcohol use versus Plaintiff's other severe impairments, making it impossible to determine whether the ALJ properly separated substance-related limitations from limitations caused by other impairments. (*Id*.). In response, the Commissioner contends that the drug and alcohol abuse analysis only applies

28

after an ALJ finds a claimant disabled, which did not occur in this case, and that the ALJ properly considered Plaintiff's history of alcohol use disorder in evaluating all of Plaintiff's severe and non-severe impairments and as evidence undermining his subjective complaints of disabling pain and other symptoms.  (Doc. 14 at p. 10).

In cases where a claimant suffers from alcoholism or drug addiction, "[a]n individual shall not be considered to be disabled" if "alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C); 42 U.S.C. § 1382c(a)(3)(J); *see also* 20 C.F.R. §§ 404.1535(a), 416.935(a).  "The regulations implementing § 423(d)(2)(C) provide that once the Commissioner determines a claimant to be disabled and finds medical evidence of drug addiction or alcoholism, the Commissioner then 'must determine whether ... drug addiction or alcoholism is a contributing factor material to the determination of disability.'"  *Doughty v. Apfel*, 245 F.3d 1274, 1279 (11th Cir. 2001) (quoting 20 C.F.R. § 404.1535(a)).  Thus, "[t]he implementing regulations make clear that a finding of disability is a condition precedent to an application of § 423(d)(2)(C)," *i.e.*, "[t]he Commissioner must first make a determination that the claimant is disabled."  *Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (citation omitted).  Only after a claimant has been determined to be disabled must the Commissioner "then make a determination whether the claimant would still be found disabled if he or she stopped abusing alcohol."  *Id.*; 20 C.F.R. § 404.1535(b)(1) ("The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.").  "The ALJ makes this determination by first evaluating which of the claimant's physical and mental limitations would remain if the claimant stopped using drugs or alcohol."  *Murray v. Berryhill*, No. 2:16-CV-878,

2018 WL 992820, *5 (M.D. Fla. Feb. 21, 2018) (citing 20 C.F.R. § 404.1535(b)(2)).  "The ALJ then must determine whether any or all of the remaining limitations would be disabling; if the remaining limitations are not disabling, then the ALJ must find that the claimant's drug addiction or alcoholism is a contributing factor material to the determination of disability."  *Id*. (citing 20 C.F.R. § 404.1535(b)(2)(i)).  If, however, "the ALJ determines that the remaining limitations would be disabling, the ALJ must conclude that the claimant is 'disabled independent of [his] ... alcoholism and ... [his] ... alcoholism is not a contributing factor material to the determination of disability.'"  *Id*. (citing 20 C.F.R. § 404.1535(b)(2)(ii)); see *James v. Astrue*, No. 308-CV-689, 2009 WL 5128008, *2 (M.D. Fla. Dec. 18, 2009) ("In other words, the ALJ must base th[e] initial disability determination [applying the five-step sequential procedure] on substantial evidence of medical limitations without deductions for the assumed effects of use disorders.  The inquiry here concerns strictly symptoms, not causes[,] such that if the gross total of a claimant's limitations, including the effects of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of substance use disorders are absent.") (citations, internal quotation marks, and alteration omitted).  "[T]he claimant bears the burden of proving that his alcoholism or drug addiction is not a contributing factor material to his disability determination."  *Doughty*, 245 F.3d at 1280.

The ALJ found that Plaintiff had the following severe impairments: "degenerative impingement, degenerative arthrosis, and rotator cuff tear of the right shoulder, alcohol use disorder, depressive disorder, with anxiety, and post-traumatic stress disorder (PTSD)."  (Tr. 30). The ALJ properly considered all severe and non-severe impairments in relation to "all symptoms" and "medically determinable impairments."  (Tr. 32, 33).  The ALJ noted that Plaintiff "reported problematic drinking, poor sleep, and nightmares."  (Tr. 31).  And the ALJ summarized the list of

30

all symptoms alleged:

> The claimant has alleged disability due to right shoulder pain and mental health issues. He reported that he could not lift more than fifteen pounds and had trouble holding items. In addition, he noted pain with personal care activities, along with trouble lifting, reaching, talking, hearing, and using his hands. In terms of his mental health, the claimant reported depression, with poor focus and difficulty remembering, completing tasks, concentrating, understanding, following instructions, getting along with others, and handling stress and changes in routine (Ex. 3E). The claimant's wife, Angelia Sanders, reported that the claimant had trouble tolerating crowds and was easily aggravated. Further, she said that the claimant had trouble lifting, reaching, talking, hearing, remembering, concentrating, understanding, following instructions, getting along with others, and handling stress and changes in routine (Ex. 4E).

(Tr. 33).

The ALJ's decision reflects that the ALJ explicitly considered Plaintiff's alcohol use disorder along with his other severe and non-severe impairments in fashioning Plaintiff's RFC. The ALJ noted:

> In addition, he reported daily alcohol use, along with PTSD symptoms (Ex. 2F/72). He was noted to have depression, PTSD, and alcohol abuse disorder at that time (Ex. 2F/74). In November of 2022, the claimant reported ongoing depression, agitation, anxiety, and frustration, with problematic drinking. Claimant's doctor counseled him on the importance of cessation of substance use (alcohol) and noted that alcohol use is counterproductive to treatment of mental illness. Although substance abuse (alcohol) ... and alcohol dependence are noted in the record, the claimant reported decreased use of alcohol, stating that he currently has 2 to 3 drinks per week, but drunk more heavily in the past. (Exs. 4F/41, 52, 44, 149, 142, 143, and 153; 4F/10; 2F, 28 and 46; and 3F/15 and 58). The claimant further reported poor sleep, with nightmares (Ex. 2F/8).
>
> ***
>
> In sum, the medical evidence and other evidence in the record, along with his daily living activities at Ex. 3E, is not consistent with the claimant's allegations regarding his disabling-level severity of his symptoms.
>
> ***
>
> In sum, the above residual functional capacity assessment is supported by the medical evidence, opinion evidence, and other evidence in the record.

\*\*\*

> The claimant has also experienced symptoms of alcohol use disorder, depressive disorder, anxiety, and PTSD, such as impaired memory and concentration, frustration, anger, irritability, poor sleep, nightmares, agitation, and trouble handling stress and change in routine. ... Based on the above discussion of the claimant's impairments and related symptoms, the entirety of the record supports the residual functional capacity listed herein.

(Tr. 34, 35). The ALJ later determined that "the preponderant evidence does not support a finding that the claimant is disabled, even considering the effects of his alcohol use." (Tr. 37).

Plaintiff does not identify record evidence showing effects of alcohol use disorder that was different from the effects of his other impairments. Because the ALJ concluded that Plaintiff was not disabled after considering all of the severe impairments, no materiality analysis was required. Although the ALJ went on to state that "the undersigned finds that the record evidence fails to demonstrate that the claimant's history of alcohol use constitutes a contributing factor material to the determination of disability," such determination was unnecessary. *Wiehe v. Bisignano*, No. 3:24-CV-05065, 2025 WL 1554963, \*2 (W.D. Mo. June 2, 2025) (collecting cases); *Audrey E. v. Comm'r of Soc. Sec.*, No. 1:24-CV-00159 EAW, 2025 WL 1792682, \*4-5 (W.D.N.Y. June 30, 2025) (collecting cases); *Martin v. Berryhill*, No. CV 16-2630, 2018 WL 1079613, \*5 (E.D. Pa. Jan. 26, 2018), *report and recommendation adopted*, No. CV 16-2630, 2018 WL 1071880 (E.D. Pa. Feb. 27, 2018); *Natalie L. on behalf of Chad L. v. Saul*, No. 1:19-CV-00489, 2021 WL 1217858, \*10-11 (D. Idaho Mar. 31, 2021); *Chrzanowski v. Kijakazi*, No. 3:21-CV-29, 2022 WL 1749830, \*4-5 (D.N.D. Mar. 8, 2022). Accordingly, Plaintiff's argument is without merit.

## V.    Conclusion

For the reasons stated above, the Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment (Doc. 13) be **DENIED,** that the Commissioner's motion for summary judgment (Doc. 14) be **GRANTED,** and that the Commissioner's decision be **AFFIRMED**.

It is **ORDERED** that all objections to this Recommendation must be filed no later than **March 3, 2026**.  An objecting party must identify the specific portion(s) of all factual findings/ legal conclusions to which objection is made and must describe in detail the basis for each objection.  Frivolous, conclusive, or general objections will not be considered.

After receiving objections, the District Judge will conduct a *de novo* review of the challenged findings and recommendations.  The District Judge may accept, reject, or modify the Recommendation or may refer the matter back to the Magistrate Judge with instructions for further proceedings.  *See* 28 U.S.C. § 636(b)(1)(C).  A party shall be deemed to have waived the right to challenge on appeal a District Judge's order to the extent it is based upon unobjected-to findings or recommendations.  Unobjected-to factual and legal conclusions may be reviewed only for plain error if necessary in the interests of justice.  *See* 11th Cir. R. 3-1.

No party may appeal this Recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  A party may appeal only from a final judgment ultimately entered by the District Judge.

**DONE** this the 17th day of February 2026.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**

33